UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

FILED
JUL 20 2005

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR 05-30009 |
| Plaintiff, | * | |
| -vs- | * | ORDER AND OPINION |
| | * | DENYING MOTION FOR |
| IRENE SHAVING, a/k/a IRENE DUBRAY, | * | RECONSIDERATION |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant was charged with possession of marijuana with the intent to distribute and manufacturing a controlled substance. The jury was selected to try the issues on May 23, 2005, and returned on May 25, 2005. On May 25, 2005, the jury was sworn, received all the evidence, and was excused until May 26, 2005, at which time the court intended to allow closing arguments, instruct the jury, and allow deliberations to commence.

On the morning of May 26, 2005, following the jury instruction settlement conference, a court security officer notified the court that he had been present in the elevator a few minutes earlier with a juror, the defendant's investigator, who had been a witness for the defendant at the trial, and a contract employee for the United States Marshals Service, who was hired as a deputy marshal for court proceedings that week. On the elevator ride up to the courtroom, the contract deputy made a statement to the defendant's investigator, to the effect that "Are you here with another one of your guilty clients?" The juror heard the comment, stated that she was a juror, placed her hands over her ears, and said "I am not supposed to hear this."

Court convened outside the presence of the jury rather immediately thereafter and the court advised the attorneys and the defendant what had transpired. The court indicated that a mistrial was probably appropriate, given the serious government misconduct which occurred in the presence of the juror. The defendant orally moved for a mistrial. The motion was granted, a mistrial was declared, and the case was dismissed with prejudice.

The government has filed a motion (Doc. 61) for reconsideration of the order dismissing the case with prejudice. The government contends that it should not be precluded from retrying the defendant.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." "[T]he Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense." United States v. Dixon, 913 F.2d 1305, 1308 (8th Cir. 1990) (*quoting* Abney v. United States, 431 U.S. 651, 660-61, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977)).

> The underlying idea [of the Double Jeopardy clause], one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting [her] to embarrassment, expense and ordeal and compelling [her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent [she] may be found guilty.

United States v. Dixon, 913 F.2d at 1309 (*quoting* Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)). *See also* United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

> The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

Arizona v. Washington, 434 U.S. 497, 503-05, 98 S.Ct. 824, 829-30, 54 L.Ed.2d 717 (1978). There is no question that the defendant was placed in jeopardy when the jury panel was sworn. The Double Jeopardy Clause does not automatically bar retrial when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Arizona v. Washington, 434 U.S. at 505, 98 S.Ct. at 830. *See also* Gori v. United States, 367 U.S. 364, 367-68, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961) ("The double-jeopardy provision of the Fifth Amendment . . . does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment."). The question here is, under what circumstances retrial is to be precluded when the trial is aborted prior to verdict at the defendant's request based upon misconduct by a government agent.

The Supreme Court has explicitly declined to formulate rules, based upon categories of mistrial circumstances, to determine whether retrial must be precluded consistent with the Double Jeopardy Clause. United States v. Jorn, 400 U.S. at 480, 91 S.Ct. at 555; Wade v. Hunter, 336 U.S. 684, 691, 69 S.Ct. 834, 838, 93 L.Ed. 974 (1949). The "defendant's valued right to have [her] trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. at 689, 69 S.Ct. at 837.

The "manifest necessity" standard was first expressed in United States v. Perez, 9 Wheat. 579, 580 (1824). This would usually arise after a "hung jury." In the case at bar, the defendant reluctantly moved for a mistrial. Generally,

> in the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and the "manifest necessity" standard has no place in the application of the Double Jeopardy Clause.

Oregon v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982). "[E]ven where the defendant moves for a mistrial, there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." Oregon v. Kennedy, 456 U.S. at 673, 102 S.Ct. at 2088.

> In *United States v. Dinitz*, 424 U.S., at 611, 96 S.Ct., at 1081, we said:
> > "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions."
>
> This language would seem to follow the rule of *United States v. Tateo, supra,* 377 U.S. at 468, n. 3, 84 S.Ct., at 1590 n. 3, in limiting the exception to cases of governmental actions intended to provoke mistrial requests. But immediately following the quoted language we went on to say:
> > "[The Double Jeopardy Clause] bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *United States v. Dinitz*, 424 U.S., at 611, 96 S.Ct., at 1081 (citation omitted).
>
> The language just quoted would seem to broaden the test from one of intent to provoke a motion for a mistrial to a more generalized standard of "bad faith conduct" or "harassment" on the part of the judge or prosecutor.

Oregon v. Kennedy, 456 U.S. at 674, 102 S.Ct. at 2088-89.

3

>Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes "a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error." *United States v. Dinitz, supra*, 424 U.S., at 609, 96 S.Ct., at 1080. Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

Oregon v. Kennedy, 456 U.S. at 675-77, 102 S.Ct. at 2089.

The present case does not fit neatly into any described scenarios. A mistrial was not declared over the objection of the defendant. I expressed my dismay and questioned the defendant whether a mistrial was being reluctantly sought. The conduct causing the mistrial does not fit neatly into the Supreme Court's discussion of prosecutorial misconduct intended to goad the defendant into requesting a mistrial.

A mistrial with prejudice was nonetheless appropriate here. The government's evidence as to possession and manufacturing was very weak. This case involves hemp growing wild and uncultivated some distance from defendant's residence. Many other people, including a fugitive from justice, had access to the hemp. There was no evidence that defendant had harvested the hemp or used hemp or marijuana. The investigating officers did not cut down the hemp or take it into evidence. They left it to grow. Hemp of this type grows wild in many areas of South Dakota.

The officers were twice on the property of defendant looking for a person on supervised release for whom a warrant had been issued. She allowed them to search her house and other real estate. She led them toward the hemp in an effort to locate the fugitive. The law enforcement officials were not looking for hemp, either growing or harvested. This case, to the extent there was a case, properly belonged in tribal court and not in federal court. This defendant is neither a drug dealer nor a drug user. The defendant had been in custody for quite some time

awaiting trial and probably would have remained in custody for a longer period of time while awaiting a second trial. I heard all the evidence. Even if the defendant had been convicted, I would have immediately released her from custody and not imposed any additional time in custody. Thus, a second trial would only have resulted in the defendant receiving a much longer sentence than should have been imposed. My trial schedule is extremely heavy. A re-trial could not have been conducted until after a delay of at least four months. As of July, 2005, any case being continued is being continued into December. I have one week in August in which 17 jury cases are set for trial involving 30 defendants. Last month, 31 new indictments were handed down. Defendant was effectively denied her Fifth Amendment right to go to the jury and perhaps end the dispute with an acquittal. *See* United States v. Jorn, 400 U.S. at 484, 91 S.Ct. at 557. The government should not, under the circumstances present, be allowed another chance to garner better evidence in hopes of putting forth a better case before the jury.

      The actions of the government agent were an affront to the basic tenet that defendants are presumed innocent unless and until proven guilty beyond a reasonable doubt. This contract agent knew a trial was being conducted. If he had paid attention, he would have known that the person in the elevator with him was a member of the jury. This contract agent had actually been in the well of the courtroom as a government agent during jury selection. He is a long time law enforcement official, having served for many years as the deputy sheriff in charge of the county jail in Pierre, South Dakota. He is not some uninformed person grabbed off the streets. I do not know, however, what training, if any, he has had as a "contract deputy United States Marshal." His remarks to the investigator in the presence of the juror would only serve to cause the juror to question the testimony of the investigator on behalf of the defendant. To make matters worse, this was a brand new jury panel. They had no experience sitting on any other cases. There is no evidence that, when the juror identified herself, the contract agent immediately apologized or made a statement that he was simply kidding and that the juror should pay no attention to what he said. A mistrial reflected the "need to hold litigants on both sides to standards of responsible professional conduct in the clash of an adversary criminal process." United States v. Jorn, 400 U.S. at 485-86, 91 S.Ct. at 557. While the prosecutor did not have any direct control over the contract deputy, the actions of a federal agent reflected the fears of all involved in the defense of

criminal cases and that of the judiciary as well - that jurors will be biased in favor of the prosecution based solely on the fact that a defendant has been investigated (that term is used loosely in conjunction with the charges against this defendant) and charged with a criminal offense. The misconduct which occurred in the presence of a juror had the potential to poison the panel and could have, if not reported, resulted in an unjust conviction in this case. A dismissal with prejudice was necessary to make clear to all persons involved in any way with a federal criminal trial – prosecutors, defenders, court personnel, and security – that such outrageous misconduct will not be tolerated in a United States Courthouse while a defendant is on trial for her liberty. Every court official in the courthouse knew what had transpired. To allow the government to re-try this defendant under all the circumstances would be a scandal.

Now, therefore,

IT IS ORDERED that the government's motion (Doc. 61) for reconsideration is denied.
Dated this 19th day of July, 2005.

BY THE COURT:

Charles B Kornmann
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Barbara J Paepke
DEPUTY
(SEAL)